Marshall, Ch. J.,
 

 after stating the case, delivered the opinion of the court, as follows : — The plaintiff in error contends, 1st. That the placing of the goods in the Lazaretto, was not “ a landing in safety at Leghorn,” and a termination of the voyage. 2d. If the loss happened during the continuance of the risk, the plaintiff is not prevented from recovering, by the warranty in the policy against particular average.
 

 In support of his first point, he contends that “Leghorn,” in the policy, *82-¶ means the city and not the port of Leghorn. *2d. That the Laza- -* retto being substituted for the ship, for the greater safety of the goods, their situation, as it respects all parties, while performing quarantine in the Lazaretto, is precisely the same as if performing quarantine in the ship. This argument is supposed to be much strengthened by the facts, that freight cannot be demanded until quarantine is performed, and that the lien for the freight continues after the landing of the goods. 3d. That a landing in safety must be such a landing as places the goods at the disposal of the owner or consignee.
 

 However true it may be, in general, that when we speak of Leghorn, we speak of the city which bears that name, it does not follow, that the same meaning is attached to the word when used in a policy. The insurance is “ at and from Baltimore to Leghorn.” Now, if, as is admitted, Baltimore means the port of Baltimore, it would seem not unreasonable to suppose
 
 *54
 
 that, in the same instrument, Leghorn means the port of Leghorn- -the place which is the ultimate destination of the vessel on board which the goods are laden. The voyage is understood to be terminated, when the vessel arrives at her port of destination, and has been moored there in safety for twenty-four hours.
 

 But it will be conceded, that the termination of the voyage as to the ship, does not necessarily terminate the risk on the goods. This risk may continue, when the voyage as to the ship is ended. Its duration depends on the intention of the parties, and this intention must be found in their contract.
 

 This brings us to consider the argument that the goods, while performing quarantine in the Lazaretto, remain at the risk of the insurer, in like manner as if performing quarantine in the ship. The words of the policy being “ beginning the adventure on the said lawful goods and merchandises from and immediately following the lading thereof on board of said vessel at Baltimore aforesaid, and so shall continue and endure until the said goods and merchandises shall be safely landed at Leghorn aforesaid.” The risk continues until'the goods be safely landed, although the *voyage as to the ship, might be terminated previous to their landing. *■
 

 In ordinary cases, where the government does not interfere between the parties, this risk would continue, until the goods should be landed in safety at the usual place, and at the disposal of the consignee. If it were usual to receive goods at the Lazaretto, or at any other place on the shore of the port, it would be the duty of the owner or consignee to receive them there, and a landing at such place, it is admitted, would be a landing at Leghorn.
 

 If, on the other hand, the goods, while performing quarantine, remained on board the ship, and could not be landed, it is not to be doubted, that they would remain at the risk of the insurer. How, then, it is asked, can the substitution of the Lazaretto for the ship alter this risk ? A substitution made, not by the act of the parties, but of the government of the country ? A substitution which does not alter the rights of the parties, since it leaves the lien of the master for his freight unimpared, and gives no power over the goods to the owner or consignee? A substitution beneficial to the insurer since it diminishes the risk on the goods ?
 

 Whatever might be the effect of this reasoning, if the establishment of the Lazaretto, and the laws of quarantine, had been of so recent a date, as not to have been in the contemplation of the parties to the contract, as to which the court gives no opinion, this cause may well be decided upon the usage found in this case, a usage of ancient date and of general notoriety. It existed, and was known to exist, when this contract was formed. When the parties stipulated, that the adventure should continue till the goods were landed in safety at Leghorn, they knew that the place of landing was the Lazaretto, and that the landing would be made under the direction and control of the local authority. This, then, must be considered as the landing contemplated in the policy. It is the landing which terminates the risk. Had the parties intended to continue the risk, during the continuance of the goods in the Lazaretto, they would have inserted, in the policy, words manifesting that intention. Instead of terminating the adventure on the landing, a *fact which they knew must take place at the Lazaretto, thirty days before the. goods could be delivered to *-
 
 *55
 
 the owner or consignee, they would have continued it, till the goods should be landed in safety, and should perform their quarantine.
 

 The court is of opinion, that under this policy, the goods in the Lazaretto were not at the risk of the underwriters, and consequently, that there is no error in the judgment of the circuit court. It is affirmed, with costs.
 

 Judgment affirmed.