GLENDINNING COMPANIES, INC. *v.* AETNA INSURANCE COMPANY

SUPERIOR COURT        FAIRFIELD COUNTY        FILE No. 142723

Memorandum filed January 4, 1978

*Clancy, Kenney & Scofield,* for the plaintiff.

*Greenberg, Hurwitz & Licari,* for the defendant.

BURNS, J. This action was submitted to the court for decision on the basis of facts stipulated as follows: The plaintiff was engaged in the business of supplying promotional items consisting of towels and flatware to some 2200 service stations in eastern Pennsylvania, New Jersey and New York. All-Vue Packaging Corporation of New Jersey was a company which packaged and distributed the plaintiff's goods to the service stations on a contract basis. Prior to April 16, 1970, the plaintiff anticipated having a supply of towels and flatware shipped to All-Vue from a Chicago warehouse in which the goods were stored. The plaintiff, therefore, contacted its insurance agent, an independent broker, to arrange for insurance coverage in anticipation of placing this shipment in transit. The plaintiff's agent contacted the defendant's underwriting department to work out the coverage, the plaintiff seeking "in-transit" loss coverage and also "all risks" coverage at specific or warehouse locations.

The plaintiff's agent and the defendant's underwriter worked out an arrangement whereby an oral binder was issued providing the plaintiff with "all

risks" in-transit coverage. The defendant's underwriting staff would not provide theft warehouse coverage because it did not have sufficient information about the security at, and desirability of, the various warehouse locations, such as All-Vue in New Jersey, to evaluate the risk and determine a premium. Theft warehouse coverage, which would have applied to this loss, was supplied after the loss and after the necessary information had been received and that coverage is not relevant to the issues in this case.

The oral binder, which was never reduced to writing, provided coverage for loss from all risks sustained while the property of the plaintiff was being transported from various locations to various other locations. It was limited to all risks while the goods were in transit and had no reference to goods not in transit. The binder was in effect from April 17, 1970, to April 24, 1970. On the latter date a policy of insurance was issued providing all risks coverage for in-transit and warehouse losses. Although that policy does not apply to the loss in issue, the terms of the oral binder and of the policy with respect to in-transit coverage are the same and the applicable provision of the policy reads as follows: *"This policy insures lawful goods and merchandise,* including supplies and their containers therefor, consisting principally of towels and stainless steel flatware the property of the insured, or held by the insured in trust, or on consignment or on commission, *while in due course of transit as hereinafter specified* and while contained on the premises of processors for purposes of processing or warehouse excluding, however, any premises owned, leased or rented by the insured." (Emphasis added.) The in-transit coverage under the oral binder was for $100,000.

The shipment in question was made through Sky-way Express in two truckloads on trailers belonging to the Penn Central Railroad, by piggyback rail to New Jersey and then by truck to All-Vue's premises. The bill of lading stated the shipper as Imperial Isava, Chicago, and the destination consignee as All-Vue. On April 16, 1970, the motor carrier delivered the goods to All-Vue in New Jersey. All-Vue's president called the plaintiff on the arrival of the goods and said that All-Vue could not use the shipment. The proper party instructed All-Vue to sign for the shipment as the plaintiff's agent and to store the trailers at All-Vue until the plaintiff could make arrangements to ship the trailers to another location. The plaintiff had no prior warning of All-Vue's inability to use the shipment.

All-Vue's president accepted the shipment as instructed and so noted on the bill of lading. Sky-way left the trailers at All-Vue under the latter's control and supervision. The contract of transportation as set forth in the bill of lading had been completed and the trailers remained on All-Vue's premises until the loss by theft which occurred on April 17, 1970, and which was discovered on April 18, 1970. The stolen trailer was found in Elizabeth, New Jersey, on April 20, 1970, but the goods, valued at $23,217, were never recovered. The theft was reported to the appropriate police authorities on April 18, 1970, and to the defendant on April 20, 1970.

Upon All-Vue's refusal to keep the goods it became necessary to reroute them for processing by another packaging firm or for storage. The decision as to the course of rerouting would take several days in the course of the plaintiff's business due to the necessity of investigating available alternatives. That was the only reason the goods were not immediately rerouted. The plaintiff paid demurrage to

the carrier while the trailer was awaiting rerouting. Except for All-Vue the plaintiff had no actual agents in New Jersey and no warehouse facility in that state.

Paragraph 10 of the insurance policy issued on April 24, 1970, contained the following clause: "This policy, subject otherwise to all its terms, conditions, valuations, limits and exclusions, is hereby extended so as to also cover shipments of the insured property originally shipped by the insured but refused or returned by the consignees thereof." The insurance policy did not limit coverage from Chicago to All-Vue. At the time the trailers were left at All-Vue, the goods therein belonged to the plaintiff which had an insurable interest in them.

The defendant investigated the incident but refused to pay the loss, despite demand made, for the reason that the goods were not in transit at the time of the theft and, therefore, were not within the coverage supplied by the defendant. The plaintiff has complied with all of its obligations under the policy.

The parties, while they are in agreement that the plaintiff had obtained coverage for the goods in question while they were "in due course of transit," are at issue as to whether, under the factual situation outlined above, the goods, when stolen, were in transit or had been delivered and transportation terminated.

There appear to be no Connecticut cases dealing with the construction of "in-transit" coverage. "In transit" generally means on the way or passage; while passing from one person or place to another. Black's Law Dictionary. "Property is considered in transit when it is moving from one location to another. This does not exclude temporary stops, incidental delays, or some deviation from the

planned route of travel. . . . However, when the property to be transported has reached its destination it is generally no longer considered in transit." *Lariviere* v. *New Hampshire Fire Ins. Co.,* 105 N.H. 73, 75. The basic test has been well stated as follows: " 'Once the transportation of the goods has started, the property remains protected under the policy during the ordinary delays in transshipments incident to such movements . . . and [coverage] is not confined to periods of actual movement, but includes periods of rest during the progress of the continuous undertaking.' . . . Whether an interruption in actual transit is sufficient to remove the goods from coverage depends on the extent and purpose of the interruption in the context of the risk contemplated. A temporary interruption for a purpose related to the carriage itself does not remove the property from transportation . . . . The true test is whether the goods, even though temporarily at rest, were still on their way, with the stoppage being merely incidental to the main purpose of delivery." *Franklin* v. *Washington General Ins. Corporation,* 62 Misc. 2d 965, 966 (N.Y.). In *Franklin,* a dealer in antiquated documents, preparatory to flying to California, placed certain of the documents which he intended to take with him inside his parked, locked car the night before his flight. His "at and in-transit" coverage was held to apply to the theft of the documents from his car during the night. See also *Citron* v. *Hartford Accident & Indemnity Co.,* 88 Misc. 2d 902, 903 (N.Y.), in which in-transit coverage was held to apply to the stolen car, partially loaded in anticipation for a trip. Similarly, where gold, which was being held overnight in a hotel for inspection by, and expected delivery to, a purchaser or for return to the place of origin, was stolen, it was held to be covered by "in due course of transit until delivered" insurance; *Ore & Chemical Corporation* v. *Eagle Star Ins. Co.,*

489 F.2d 455 (2d Cir.); and where bonds were given up to one who gave a bad check therefor, the court held delivery to be incomplete and in-transit coverage to apply. *Underwood* v. *Globe Indemnity Co.,* 245 N.Y. 111.

On the other hand, where a driver en route to Buffalo to deliver machinery was instructed by his employer to unload the machinery in Mount Vernon and return with his truck to Cleveland to get ice cream for delivery in Detroit, the theft of the machinery, discovered when the driver returned to reload, was not covered, the court finding that the original transporting process was abandoned, even though the interruption was temporary, and that the machinery was in storage and removed from in-transit coverage. *Dealers Dairy Products Co.* v. *Royal Ins. Co.,* 170 Ohio St. 336. Also, where a sealed trailer, leased to the plaintiff and shipped from Pennsylvania to Boston on a railroad flatcar, arrived in Boston and was removed from the flatcar and placed on the premises of the Boston and Maine Railroad with notice to the plaintiff, the theft thereof was not covered since the court found that the trailer had come to rest at its ultimate destination and was not in transit although awaiting further movement. *Whitehall Co.* v. *New Hampshire Ins. Co.,* 361 Mass. 865, 866. See also *Montana Power Co.* v. *Janson,* 41 App. Div. 2d 520 (N.Y.), where electric poles moved by rail to Billings, Montana, pursuant to freight bills which did not provide for any further transshipment, and taken off railroad cars and placed at the plaintiff's railroad siding where they were destroyed by fire, were found to be at their final destination and not covered by a "transit all risk" policy. It has also been held that goods which arrived at their ultimate destination and which were stored in trucks awaiting unloading were not in transit. *Boonton Handbag Co.* v. *Home Ins. Co.,* 125 N.J. Super. 287.

In the present case, the plaintiff had in-transit coverage. While it had also sought all risks coverage at specific or warehouse locations, this had not been obtained because the defendant had insufficient information about the security and desirability of various locations, such as All-Vue, to evaluate the risk. The goods were shipped under a bill of lading setting forth the destination consignee as All-Vue. When All-Vue informed the plaintiff that it could not use the shipment, the plaintiff instructed All-Vue to sign for the shipment as its agent and to store the trailers until the plaintiff could make arrangements to ship the trailers to another location. The trailers were under the control of All-Vue and the contract of transportation had been completed. These facts distinguish the present case from those cited in support of the plaintiff's claim, all of which involved a temporary interruption in the transit of the goods involved to the destination established at the inception of their journey. These goods, when held by All-Vue, were not still on their way with stoppage merely incidental to the main purpose of delivery. They had in fact been delivered into the hands of the one scheduled to receive them in accordance with the contract with the carrier, albeit in a capacity different from that originally contemplated. Although the plaintiff at that point intended to ship the goods thereafter from All-Vue to another processor or storage point, that destination and the time of shipment were unknown. That All-Vue accepted the goods as the plaintiff's agent is relevant only to relations between those two parties. As far as the transportation of the goods is concerned, they had arrived at their destination as set forth in the bill of lading and were in storage awaiting further movement. They were then in the control of the consignee, as the plaintiff's agent, and out of the control of the transporter. See *Crew-Levick Co.* v. *British & Foreign Marine Ins. Co.*,

103 F. 48, 51 (3d Cir.). The defendant had not provided coverage for the goods while at All-Vue, since it had some reservations about security at those premises, and neither the plaintiff nor the court can write into this contract coverage upon which the parties had not agreed. *Federman Co.* v. *American Ins. Co.,* 267 N.Y. 380, 383.

Judgment may enter for the defendant.