**KESSLER EXPORT CORPORATION, a domestic corporation, Plaintiff,**

**v.**

**RELIANCE INSURANCE COMPANY OF PHILADELPHIA, PENN., and American Insurance Company of Newark, N. J., Defendants.**

**No. 60–C–1094.**

United States District Court
E. D. New York.
May 14, 1962.

William A. Stetter, Jr., New York City, for plaintiff; Robert Heller, Brooklyn, N. Y., of counsel.

Greenhill & Speyer, New York City, for defendant Reliance Ins. Co. of Philadelphia, Pa.; Simon Greenhill, John M. Speyer, New York City, of counsel.

Abrams & Bleich, New York City, for defendant American Ins. Co. of Newark, N. J.; Benjamin M. Haber, New York City, of counsel.

BARTELS, District Judge.

This action, predicated upon two policies of marine insurance, one issued by Reliance Insurance Company of Philadelphia, Penn. (hereafter "Reliance") and the other by American Insurance Company of Newark, N. J. (hereafter "American"), both in favor of the plaintiff, arises out of the theft of a shipment of surplus sunglasses loaded upon a carrier's truck stationed upon plaintiff's premises.

Upon the calendar call the parties appeared before the Court and indicated that there was one issue, i. e., coverage of the policies, which required decision before the trial could proceed and they thereupon waived a trial by jury and agreed to submit the resolution of this issue to the decision of the Court upon a stipulation of facts signed by them, which was made part of the record as Exhibit I. From this exhibit the pertinent facts appear as follows.

FACTS

The relevant portions of the Reliance policy provide as follows:

"12. Warehouse to Warehouse Clause. This insurance attaches from the time the goods leave the Warehouse and/or Store at the place named in the policy for the commencement of the transit and continues during the ordinary course of transit, including customary transshipment if any, until the goods are discharged overside from the overseas vessel at the final port. Thereafter the insurance continues whilst the goods are in transit and/or awaiting transit until delivered to final warehouse at the destination named in the policy or until the expiry of 15 days (or 30 days if the destination to which the goods are insured is outside the limits of the port) whichever shall first occur. The time limits referred to above to be reckoned from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel is completed. Held covered at a premium to be arranged in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the above time limits arising from circumstances beyond the control of the Assured."

"MARINE EXTENSION CLAUSES

\*      \*      \*      \*      \*      \*

"1. This insurance attaches from the time the goods leave the warehouse at the place named in the policy, certificate or declaration for the commencement of the transit and continues until the goods are delivered to the final warehouse at the destination named in the policy, certificate or declaration, or a substituted destination as provided in Clause 3 hereunder."

Plaintiff also relies upon the following clause:

"16. Warehousing & Forwarding Charges, Packages Totally Lost Loading etc. Notwithstanding any average warranty contained herein, these Assurers agree to pay any landing, warehousing, forwarding and special charges for which this policy in the absence of such warranty would be liable. Also to pay the insured value of any package or packages which may be totally lost in loading, transshipment or discharge."

The relevant portions of the American policy provide as follows:

"4. This insurance covers only while the insured property is in transit within the limits of the Continental United States and Canada in the custody of:

"(a) Any railroad or railroad express company (including the risk while on ferries or in cars on transfers or lighters);

"(b) Public truckmen, land transfer or land transportation companies.

"This Policy also covers while on docks, wharves, piers, bulkheads, in depots, stations or on platforms, but only while in the custody of a common carrier incidental to transportation.

"This insurance attaches from the time the goods leave factory, store or warehouse at initial point of shipment, and covers thereafter continuously, in due course of transportation, until same are delivered at store or warehouse at destination."

Plaintiff, whose office and warehouse is located in Brooklyn, arranged for the shipment of certain merchandise (consisting of surplus sunglasses) to Casablanca, Morocco. Accordingly plaintiff engaged Abraham Rosen of Rosen's Trucking to pick up the shipment at plaintiff's warehouse and to deliver the same to a vessel located at Pier 1, Erie Basin, Brooklyn.

At approximately 2 P. M. on Friday, June 17, 1960, Rosen and his driver, Joseph Keezer, arrived at plaintiff's warehouse with the truck to pick up the shipment which was thereupon loaded onto Rosen's truck. At the inception of the loading the cab portion of the truck protruded from plaintiff's warehouse onto the sidewalk and the cargo section of the truck extended into the interior of the building. During the process of loading the truck was moved further out on to the sidewalk in order to permit the last portion of the cargo to be loaded onto the truck through the rear opening of the truck.[1] At all times, however, the actual loading took place totally within the confines of plaintiff's warehouse. When the truck was fully loaded, it was then backed completely into plaintiff's warehouse and the cargo portion secured. Rosen told plaintiff's president, Melvin Taks, that it was then too late to make the trip to the pier and that he would leave the truck in the warehouse and return Monday morning, June 20, 1960. Taks acquiesced and by mutual agreement the truck was left in the warehouse. After the truck was loaded Taks exhibited to Rosen a document purporting to be a bill of lading prepared by Taks and Rosen then affixed his signature thereto but Taks retained the document without Rosen receiving any copy thereof.

Rosen was to return on Monday morning, June 20, 1960, to pick up the loaded truck and a dock receipt which had also been prepared by plaintiff, and then make delivery to the pier. The truck (with its ignition key therein) and its contents were locked up inside of plaintiff's warehouse when plaintiff closed its building at about 5:15 P. M. on Friday, June 17th, and neither Rosen nor his driver at any time had the keys to the warehouse but the same remained in the possession of plaintiff. When the ware-

---

1. Plaintiff argues that this movement to and from the sidewalk in the process of loading is relevant but the Court attaches no significance thereto.

house was opened the following morning, Saturday, June 18th, the truck and its contents had been removed by an unknown person who had made an illegal entry into the building and the same were never recovered by plaintiff.

## THE ISSUE

The issue of law presented by the foregoing facts is whether plaintiff's alleged loss is covered by the "warehouse to warehouse" paragraphs under the two policies. While the terms of the policies are not identical, the intent in both seems to be the same. In the Reliance policy the "insurance attaches from the time the goods leave the Warehouse and/or Store" for the commencement of the transit, and in the American policy the "insurance covers only while the insured property is in transit" in the custody of a common carrier and attaches "from the time the goods leave factory, store or warehouse".

■ Therefore the question to be decided is whether under the wording of the policies the parties intended that plaintiff's property would be insured while loaded on the truck of the carrier upon plaintiff's premises, ready to leave for transportation to the pier after a period of repose. In other words, whether the goods left the warehouse and were in transit within the purview of the policies. The intention of the parties must be found in the contract and the circumstances surrounding the same. Gracie v. Marine Insurance Co. of Baltimore, 1814, 8 Cranch 75 at page 82, 3 L.Ed. 492; Reed v. Merchant's Mutual Ins. Co., 1877, 95 U.S. 23, at page 30, 24 L.Ed. 348.

■ ■ Plaintiff claims that the merchandise was in fact in transit and had left its premises within the intendment of the policies since the goods had been delivered to the custody of the trucker for transportation to the pier and that it was immaterial as far as the policies were concerned, that the truck remained on plaintiff's premises. This, of course, places quite a strain upon the common meaning of the words as used in the policies and also gives a new meaning to

the words "in transit". The argument implies that the goods were constructively in transit. It should be noted in passing that the Reliance policy does not refer to the custody of the carrier and that the American policy refers to the custody of the carrier only in the sense that it adds another limitation to the coverage of the policy when the property is in transit. "Custody of the carrier" and "in transit" are not synonymous. In support of its contention plaintiff cites a number of cases which, in effect, provide that under certain circumstances goods may be deemed to be in transit even though at the time of the loss they were not in motion, i. e., Gulf Ins. Co. v. Ball, Tex.Civ.App.1959, 324 S.W.2d 605; Koury v. Providence-Washington Ins. Co., 1929, 50 R.I. 118, 145 A. 448; J. G. Ries & Sons, Inc. v. Automobile Ins. Co., 1939, 121 N.J.L. 493, 3 A.2d 610.

In the above cases the merchandise had left the premises of the insured shipper and was in the legal custody and control of the carrier. The fact that thereafter there was a suspension or cessation of movement did not vitiate the inception of the transit or the custody or control of the carrier. The facts in those cases are not analogous to those here present. Goods may be "in transit" although they are not continuously in motion. Plaintiff also cites the following cases referring to the carrier's liability when the shipper has surrendered custody of goods to the carrier for immediate transportation: St. Louis I. M. & S. R. Co. v. Murphy, 1895, 60 Ark. 33, 30 S.W. 419; Colorado & S. R. Co. v. Breniman, 1912, 22 Colo.App. 1, 125 P. 885; Nichols v. Smith, 1874, 115 Mass. 332; Fitchburg & W. R. Co. v. Hanna, 1856, 6 Gray (Mass.) 539, 66 Am.Dec. 426; Fisher v. Lake Shore & M. S. I. Co., 1899, 17 Ohio Cir.Ct.R. 491, 9 Ohio Cir.Dec. 413. These cases are likewise not relevant to the present discussion. The same may be said for the definition of the term "in transit" as used in Section 139 of the New York Personal Property Law, McKinney's Consol. Laws, c. 41 cited by the plaintiff. Here the Court is dealing

with the intent and interpretation of specific paragraphs of insurance policies to determine their respective coverage and not with the general liability of a carrier after custody of the goods has been surrendered to it by the shipper or with the right of a seller to stop goods while in transit as set forth in a statute.

On their part defendants contend that the policies do not and were never intended to cover a loss occurring before the goods leave the insured's premises and particularly while the same are within plaintiff's possession and control. Among other cases, they rely upon Plata American Trading, Inc. v. Lancashire, S.Ct., N.Y., 1957, 29 Misc.2d 246, 214 N.Y.S.2d 43, 1958 A.M.C. 2329, aff'd 6 A.D.2d 1036, 178 N.Y.S.2d 1021, leave to appeal denied, 7 A.D.2d 838, 182 N. Y.S.2d 295; Mayflower Dairy Products, Inc. v. Fidelity-Phenix Fire Ins. Co. of New York, 1938, App.Term, 1st Dept., 170 Misc. 2, 9 N.Y.S.2d 892; San-Nap-Pak Mfg. Co. v. Firemen's Ins. Co. of Newark, N. J., Cty.Ct., 1944, 47 N.Y.S. 2d 542; and Brammer Corp. v. Holland-America Ins. Co., 34 Misc.2d 337, 228 N. Y.S.2d 512.

In Plata a shipper of tallow purported to pump from his shore tanks 501 tons of tallow into a standby vessel but as a matter of fact, only permitted 375 tons to pass through the gauge pump and into the vessel, having diverted the balance by transfer into other shore tanks. The question posed was whether the balance of 126 tons represented a loss covered by the policy which provided that the insurance would attach "from the time the goods leave the warehouse at the place named in the policy for the commencement of the transit". It was held that since the tallow never passed through the gauge pump for the final passage to the vessel it had never been physically separated from the warehouse and consequently could not be said to be "in transit". Plaintiff states that this case is distinguishable because the shipper never intended the tallow to leave his premises. That, however, would seem to be unimportant if the goods in fact never left the shipper's possession and control.

Both in San-Nap-Pak and Mayflower the insured shipper was his own carrier and the trucks or trailers were loaded on one day for delivery at a subsequent period and were on plaintiff's premises at the time of the loss. The court held in the former case that the goods "had never started but were there awaiting the beginning of their transit toward their destination", and in the latter case that "transit cannot include a period commencing on the evening of one day when for its own convenience the seller in its own premises loads the goods on its truck, and extending then on through the night during which the loaded truck is stored in such premises on to that time in the morning of the next day when the truck is manned and proceeds on its way to the point of destination." These cases held that the goods loaded on the trucks were in fact in storage. Plaintiff argues with considerable persuasion that those cases are distinguishable on the ground that since the shipper acted as his own carrier, the loading of the trucks did not take the goods out of the shipper's custody and, moreover, the trucks remained on the shipper's premises for the convenience of the shipper. These authorities lay down the principle that the mere segregation of the goods for transit is not sufficient to constitute transit. This point is further illustrated in the Brammer case. There the goods were removed from the manufacturing area of the building and placed in the shipping area where they were turned over to the control of the trucker who left the goods in the shipping area for his own convenience for a period of time until the loss occurred. The court held that although the goods were placed in a position in the warehouse for transportation and had been checked out to the trucker "they were not checked out of plaintiff's building" and hence did not fall within the purview of the "warehouse to warehouse" clause of the insurance policy. Convenience would appear to be irrelevant. Regardless of

whose convenience is accommodated, the facts will control.

None of the foregoing cases cover the precise circumstances of the case at bar but the principles enunciated therein seem to be clear. As indicated by the authorities cited by plaintiff, there can be no doubt that if the goods leave the premises of the shipper in the custody of the trucker, they will nevertheless be covered by the policy even if the trucker's transportation is temporarily interrupted. In such a case the goods have left the shipper's premises and the trucker is deemed to have legal custody and control of the goods for the purpose of transit, the shipper being without possession or custody. When transit ceases may not always be crystal clear. For instance, it was held in Druss Stores, Inc. v. Travelers Indemnity Company, 1960, App.Term, 1st Dept., 23 Misc.2d 913, 206 N.Y.S.2d 236, that the goods ceased to be in transit when plaintiff's driver purposely passed the place of destination and parked his truck unattended in front of his home. It also follows that if the goods remain in the possession and control of the shipper even though the goods are loaded on trucks ready for transit, as illustrated in San-Nap-Pak and Mayflower, the insurance coverage does not attach.

CONCLUSION

In this case the goods were loaded on the carrier's truck on the shipper's premises. Were they in the legal custody of the carrier? Custody means the keeping or guarding of property by one who is charged with responsibility therefor and who has through physical control the power to provide the same. See Bierman-Danzi Corp. v. Firemen's Fund Ins. Co., Mun.Ct., 1952, 203 Misc. 119, 115 N.Y.S.2d 706; Hillcrea Export & Import

Co., Inc. v. Universal Ins. Co., D.C.N.Y., 1953, 110 F.Supp. 204, 208, aff'd 2 Cir., 212 F.2d 206, cert. den., 348 U.S. 834, 75 S.Ct. 57, 99 L.Ed. 657. Obviously, the goods in this case were not in the legal custody of the carrier at the time the loss occurred. However, the Court does not believe that fact to be important here. The plaintiff could not prevail in either event because the goods had not left the shipper's premises.[2] Under these policies custody and control in the trucker becomes important only after the trucker has left the shipper's premises. Until that event there is no transit and it would stretch the imagination to believe that the parties intended otherwise. But in this case there is even a stronger element which seems to be conclusive in favor of the insurance companies. While the shipper in the first instance turned over the goods to the trucker for transportation, the plan was subsequently changed and when the shipper consented to permit the carrier's truck to remain loaded upon its premises with a key in the ignition, the shipper not only retained possession but also complete custody and control of the goods. The trucker no longer had, if he ever received, custody and control of the goods. During this intermediate period there was no intent that the goods should leave or transit begin. The shipper did not rely upon the responsibility of the trucker but upon its own ability to protect its possession and control. The sunglasses never left the shipper's premises and were not in transit and were not in the custody or control of the trucker. While the trucker gave a receipt for the goods the night before when he signed the so-called bill of lading, this receipt could not become effective until he began transit because actually he was not in

2. See Armory Mfg. Co. v. Gulf C. & S. F. Ry. Co., 1896, 89 Tex. 419, 37 S.W. 856, which involved the construction of a bill of lading exempting a common carrier from common law liability except liability for negligence, while the goods were "in transit or in depot or place of transshipment, or of landing at place of delivery". There cotton had been delivered by plaintiff to a compress company and was on the platform of the compress company awaiting shipment at the time the loss occurred. *Held:* the cotton was not actually "in transit" because it had not moved toward its destination and, further, that while on the platform it was not constructively in transit.

receipt of the goods and did not have possession, control or custody. It was never intended by that receipt that the trucker should be responsible for storage on plaintiff's premises during the night. It also appears, although it is not necessary to the decision, that it was not contemplated that the trucker should depart from the premises with the goods until he had received from the shipper on the day of departure a dock receipt covering the goods to be delivered to the pier.

It is hard to believe that a reasonable man in the shipper's position could construe the language in either policy as giving him protection under the circumstances of this case and this Court cannot, without doing violence to the language of the policies, find that the goods had left the shipper's premises or were in transit either actually or constructively.

A final word in answer to plaintiff's argument that paragraph 16 of the Reliance policy supports its position. That paragraph deals with "Warehousing & Forwarding Charges, Packages Totally Lost, Loading, etc.", the last line of which reads "Also to pay the insured value of any package or packages which may be totally lost in loading, transshipment or discharge". A reading of this paragraph clearly indicates that it refers to an exception to the Average Warranty contained in paragraph 15 of the policy and does not modify or restrict the "warehouse to warehouse" paragraph herein discussed. Moreover, it cannot be said that the goods in this case were "lost in loading" and consequently the loss does not come within its compass.

In view of this determination of the issue of coverage under the two policies, it becomes unnecessary to proceed with the trial of the other issues presented by the pleadings; accordingly the Court dismisses the complaint with prejudice and grants judgment for the defendants.

The foregoing constitutes the Court's findings of fact and conclusions of law.

Settle order within ten (10) days on two (2) days' notice.