**MATTEL, INC., Plaintiff-Appellant,**

v.

**INTERSTATE CONTRACT CARRIER CORP., Defendant-Appellee.**

**No. 30, Docket 83–7243.**

United States Court of Appeals, Second Circuit.

Submitted Sept. 19, 1983.

Decided Nov. 22, 1983.

Order on Rehearing Dec. 27, 1983.

Max J. Gwertzman, New York City (Gwertzman, Pfeffer, Toker & Lefkowitz, New York City, of counsel), for plaintiff-appellant.

Seymour J. Ugelow, New York City (Rein, Mound & Cotton, New York City, of counsel), for defendant-appellee.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BRIEANT, District Judge.*

OAKES, Circuit Judge:

This diversity case involves the question whether the risk of loss in respect to certain goods to be transported falls on Mattel, Inc. ("Mattel"), the manufacturer/distributor, and here shipper, or on Interstate Contract Carrier Corp. ("Interstate"), the contract carrier. The United States District Court for the Southern District of New York, Morris E. Lasker, Judge, held that the risk

* Of the Southern District of New York sitting by designation.

of loss, in this case of toys in a trailer left on the shipper's premises, fell on the shipper, and dismissed Mattel's complaint accordingly. We reverse.

Pursuant to stipulated facts, it appears that Mattel operated a facility in Edison, New Jersey, and that it entered into a transportation contract with Interstate, a contract carrier, covering a minimum of 44,000 pounds per month of toys for transportation to designated consignees. Interstate then contracted with independent owner/operators of tractors to pick-up and transport the loads upon oral notification that trailers had been made ready for pick-up. At all relevant times Interstate also maintained an employee at Mattel's premises to conduct a tally of commodities loaded on the trailers to be picked up, and to verify the quantity and condition of the goods. That employee, one Mike Fielden, was authorized to issue bills of lading on behalf of Interstate.

 The trailers were actually loaded by employees of both Mattel and Interstate. The Mattel employees lifted the toys on pallets into the trailers by means of a fork lift, while people hired by Interstate on an as needed daily basis would remove the goods from the pallets and stack them in the trailer. On October 7, 1978, trailer 3065 was loaded with 1604 cartons of toys, and Mattel prepared a bill of lading indicating that the goods would be consigned to a consignee in San Antonio, Texas, with certain intermediate stops. Fielden signed and technically "issued"[1] the bill of lading on behalf of Interstate after confirming the count. The trailer remained on Mattel's premises awaiting arrival of a tractor, but an imposter tractor operator showed up, picked up the trailer, signed the bill of lading which had been left with the security guard at the gate, and took the trailer in tow. Subsequently, after an FBI investigation, the trailer was found, but its $58,-170.52 worth of contents were not. This suit ensued.

Judge Lasker found that under the contract, Interstate agreed to be liable for any loss or damage resulting from the negligence of it or its agent, but that since the trailer was still on Mattel's premises, and there was nothing to indicate that Interstate had a duty to guard the trailer while awaiting pick-up, Interstate was not at fault. This he found true despite the argument that Interstate was liable under general negligence principles because only it was in a position to identify authorized drivers, a "fact" not stipulated to by the parties.

Interstate argues that the determination of the court below was correct, citing *Kessler Export Corp. v. Reliance Ins. Co. of Philadelphia*, 207 F.Supp. 355 (E.D.N.Y.), aff'd 310 F.2d 936 (2d Cir.1962). There a shipper sued its insurers for theft of a shipment of sunglasses covered by marine policies which provided that the insurance should attach from the time the goods left the warehouse for the commencement of transit. The goods were loaded onto a carrier's truck, which was left locked in the shipper's warehouse. The shipper kept the key. The truck and cargo were stolen during the night. There, too, a bill of lading had been issued by the carrier prior to the theft. The district court held that regardless of whose custody the goods were in, the shipper could not prevail because the goods had not left the shipper's premises, were not in transit, and were not in the custody and control of the trucker. The contract in question in *Kessler*, however, explicitly provided that carrier liability began only when the goods were in transit. The fact that the trucker had given a receipt for the goods was immaterial since the receipt could not become effective until transit began. 207 F.Supp. at 360–61.

 In this case, on the other hand, the contract is in fact silent on when the carrier's duty of care begins.[2] With the contract

---

1. Though the parties stipulated that Mattel issued the bill of lading, bills of lading technically are "issued" by the carrier, here Interstate, which was represented by Fielden, its employee who signed the bill of lading prepared and endorsed by Mattel. This is so because the bill of lading is a kind of receipt issued by a carrier indicating that it has received the goods in good order from the shipper. *See* N.Y. Uniform Commercial Code § 1–201(6) (McKinney 1964) (U.C.C. definition).

2. The contract made the carrier liable "for any loss or damage to commodities transported hereunder resulting from the negligence of the carrier or its agents," but as the district court held, was silent as to who would be liable for loss occurring prior to actual transportation. The contract involved in *Kessler*, on the other hand, explicitly stated that the "insurance attaches from the time the goods leave the Warehouse and/or Store," and that the "insurance covers only while the insured property is in transit." 207 F.Supp. at 358.

silent and with no course of dealings before us, we must resort to state law pertaining to common carriers.[3] Here the trailer supplied by Interstate was loaded, counted, and apparently sealed, and a bill of lading was signed and issued by the carrier's representative on the premises. There was no further action that Mattel was to take to bring about transportation. The only action left was to be taken by the carrier, who had to arrange for his independent tractor operator to call for the trailer and haul it away. As nothing was left to be done by the shipper, the trailer remained on the shipper's premises merely as an accommodation for the carrier.

It is not the location of the goods which is controlling in such circumstances, but rather who it is that has actual or constructive possession of the goods. In this case the responsibility of the carrier attached when the loading was completed and the bill of lading signed. *See Crane, Hayes & Co. v. New York, N.H. & H.R.R. Co.,* 132 Misc. Rep. 682, 230 N.Y.S. 427, 430 (1928). *See also Riegel Paper Corp. v. Branch Motor Export Co.,* 207 N.Y.S.2d 697 (1960); *Charles J. Webb & Sons, Inc. v. Central R.R. Co. of New Jersey,* 36 F.2d 702, 703 (2d Cir.1929) (citing cases) ("It is the usual rule that the carrier becomes responsible as such at once upon delivery, unless the shipper has something further to do with the goods."). As the New York Court of Appeals in *London & Lancashire Fire Ins. Co. v. Rome, Watertown and Ogdensburg R.R. Co.,* 144 N.Y. 200, 205–07, 39 N.E. 79, 79–80 (1894), said:

> The liability of a railroad company as common carrier of goods delivered to it attaches only when the duty of immediate transportation arises. So long as the shipment is delayed for further orders as to destination of the goods, or for the convenience of the owners, the liability of the company is that of warehousemen. The liability of a common carrier for goods received by him begins as soon as they are delivered to him, his agents or servants, at the place appointed or provided for their reception, when they are in a fit and proper condition, and ready for immediate transportation.... The entire weight of the responsibility rigorously imposed by law upon a common carrier falls upon him contemporaneously (eo instanti) with a complete delivery of

the goods to be forwarded, if accepted, with or without a special agreement as to reward; for the obligation to carry safely on delivery carries with it a promise to keep safely before the goods are put in itinere.

*But cf. Avisun Corp. v. Mercer Motor Freight, Inc.,* 37 A.D.2d 517, 321 N.Y.S.2d 658 (1st Dep't 1971) (trailer left by the carrier on public street in front of shipper's plant to be loaded; no bill of lading issued or signed by carrier; held in a 3–2 decision that no bailment was accepted by the carrier).

Judgment reversed.

## ORDER ON PETITION FOR REHEARING

Interstate petitions for rehearing on the basis that since it is not a common carrier and hence not an insurer of the goods, see *Commercial Molasses Corp. v. New York Tank Barge Corp.,* 314 U.S. 104, 110–111, 62 S.Ct. 156, 86 L.Ed. 89 (1941), it can only be held liable if it was negligent. We agree. *See Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir.1971). The reference in our opinion to "state law pertaining to common carriers" should have been to "state law pertaining to contracts of carriage."

Interstate then argues that there was no evidence that it was negligent, especially in the light of proof of theft. But there was proof of delivery and loss, thereby making out a *prima facie* case of negligence on Interstate's part. *Id.* at 812. On the question whether Mattel, Inc. carried its burden of persuasion on the issue of negligence in the context of theft, *id.,* however, we have not had the benefit of trial court findings. The court did say: "That someone failed to exercise due care to protect the toys from theft is apparent." But it then went on to hold that Interstate had no responsibility to protect the goods at the time they were stolen. It is that conclusion which we have reversed. Thus, even though the case was submitted on a stipulation of agreed facts, in the first instance the issue of negligence is one for the trier of fact.

Judgment reversed; cause remanded.

---

**3.** This is a diversity case in which the contract was made, and the loss occurred, in New Jersey. Both parties, however, relied on New York's more developed law in this area.