CONTINENTAL GRAIN COMPANY,

v.

FRANK SEITZINGER STORAGE,
INC., Appellant,

v.

BURLINGTON NORTHERN RAILROAD
COMPANY, a/k/a Burlington
Northern Railway, Appellee.

No. 87–5113.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 1, 1987.

Decided Jan. 28, 1988.

Roger C. Malm, Hallock, Minn., for appellant.

Barry McGrath, St. Paul, Minn., for appellee.

Before HEANEY, BOWMAN and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Frank Seitzinger Storage, Inc., (Seitzinger) appeals from a summary judgment entered in favor of Burlington Northern Railroad Company (BN) on its claim that BN was liable for the loss of 926,520 pounds of wheat in transit. We reverse and remand.

### I.

In November 1983, Seitzinger entered into a contract for the sale of 83,000 bushels of wheat to Continental Grain Company (Continental), the weight to be certified upon arrival at destination. Seitzinger loaded the wheat into a twenty-six car unit train at its Kennedy, Minnesota, facility on November 25, 1983. The grain was shipped via BN on November 28, 1983, and arrived at Continental in Superior, Wisconsin, on December 10, 1983.

Seitzinger claims to have loaded approximately 198,000 pounds of wheat into each of the twenty-six C–6 type covered hopper cars that comprised the unit train, for a total of 5,150,720 pounds.[1] Continental claims to have unloaded 4,224,200 pounds of wheat from the unit train. The difference of 926,520 pounds translates into an equivalent loss of four to five hopper cars of wheat.

Seitzinger asserts that the wheat in every sixth car, four hopper cars in total, was loaded by truck. The fully-loaded trucks were weighed on Seitzinger's truck scale and then driven to belt conveyers, which transferred the wheat to the hopper cars. The empty trucks were driven back to the truck scale and weighed again. The remaining twenty-two cars were filled directly from bins to an estimated 198,000 pounds each, using a system of cubic measurements and reference to the four truck-loaded hopper cars.

Seitzinger's truck scale, which was uncovered and exposed to the elements, was not certified as official or supervised under the United States Grain Standards Act, 7 U.S.C. § 71, *et seq.* The truck scale was certified as accurate, however, by the state of Minnesota. Continental, on the other hand, weighed the wheat on a track scale at its Superior facility that had been certified under the United States Grain Standards Act.

Based on the weights submitted by Continental, BN assessed Continental additional freight charges of $4,969.26 because the unit train had "dead freight," which meant the unit train failed to meet the minimum weight applicable to lower freight charges. Continental subsequently commenced an action against Seitzinger in state court for payment of the $4,969.26. Seitzinger an-

---

1. In response to BN's motion to strike portions of Seitzinger's reply brief, we recognize that the weight of the wheat loaded at Seitzinger's Kennedy, Minnesota, facility is a disputed fact. For the purposes of summary judgment, we have assumed that Seitzinger weighed on its truck scale the grain loaded into four hopper cars and estimated the weight of the remaining twenty- two cars using a system of cubic measurements in arriving at the total origination weight of 5,150,720 pounds. We find it unnecessary to address the remainder of the motion because the relative size of the claim and the credibility of Seitzinger's measurement method are not relevant to our determination.

swered and counterclaimed for the value of the lost grain, $59,451.77, contending that Continental was negligent in its care, custody, control and weighing of the grain. Seitzinger also impleaded BN for the dead freight charges and the alleged grain loss, totaling $64,421.03, contending that BN was negligent in the care, custody, control and delivery of the grain. The action was removed to district court on the ground that it arose under 49 U.S.C. § 11707 (Carmack Amendment) and 49 U.S.C. §§ 81–122, and on the additional ground of diversity.

In granting BN's motion for summary judgment, the district court relied on 49 C.F.R. § 1037.1, which provides as follows:

PART 1037—RULES FOR THE HANDLING OF BULK GRAIN AND GRAIN PRODUCTS IN INTERSTATE COMMERCE, AND THE FILING, INVESTIGATION, AND DISPOSITION OF CLAIMS FOR LOSS AND DAMAGE INCIDENT THERETO, WHICH SUPERSEDE THE RULES PRESCRIBED IN EX PARTE NO. 263, LOSS AND DAMAGE CLAIMS, 340 I.C.C. 515 (37 FR 20943)

\* \* \* \* \* \*

§ 1037.1 Weights and weighing.

(a) How determined—Accuracy of the weights used in determining the quantity of grain and grain products received for transportation by carriers and delivered by them to consignees being of primary and fundamental importance, the use of estimated weights based upon the cubical contents of the load and the test weight per bushel of the grain and grain products, or otherwise, will not be accepted. All shipments shall be carefully weighed by competent weighers upon scales that are known to be accurate within the limits of tolerance stated in scale specifications.

\* \* \* \* \* \*

(e) A difference in weights at origin and destination, both of which are based on supervised scales, establishes *prima facie* that the loss occurred in transit and that the railroad is liable. \* \* \* When a difference in weights is based in part on an unsupervised weight, \* \* \* a *prima facie* case of railroad liability for loss in transit has *not* been established. Such difference in weights is a factor, however, to be considered in connection with other evidence that a clear-record car arrived at destination with seals intact and unbroken or that the shipper made a written complaint that any car placed for loading was defective, in response to which the railroad filed a written report after investigation of the complaint.

49 C.F.R. § 1037.1 (1986) (emphasis in original).

## II.

In reviewing the district court's grant of summary judgment, we apply the same standard as that applied by the district court. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Under the Federal Rules of Civil Procedure, summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits \* \* \* show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hegg v. United States*, 817 F.2d 1328, 1331 (8th Cir. 1987).

Summary judgment is not a substitute for trial on disputed factual issues. *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987). It "is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact." *Id.* The jury, not the judge, is to make credibility determinations, weigh the evidence, and draw legitimate inferences from the facts. *Hegg*, 817 F.2d at 1331. Accordingly, the appropriate inquiry is whether reasonable

jurors, viewing the facts and all reasonable inferences derived therefrom in the light most favorable to the nonmoving party, could find for the nonmovant by a preponderance of the evidence. *Id.*

■ Seitzinger's claim falls under the "Carmack Amendment" to the Interstate Commerce Act, which essentially provides that a carrier is liable for the actual loss or injury it causes to a shipper's property.[2] In an action to recover for goods lost in transit, a shipper must show the following to establish a prima facie case: (1) delivery of a quantity of goods to the carrier, (2) arrival at destination of a lesser quantity, and (3) the amount of damages. *Johnson & Johnson v. Chief Freight Lines Co.*, 679 F.2d 421, 421 (5th Cir.1982); *Humphrey Feed & Grain, Inc. v. Union Pac. R.R. Co.*, 199 Neb. 189, 257 N.W.2d 391, 396 (1977); *see Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 1144–45, 12 L.Ed.2d 194 (1964). Once the shipper has established a prima facie case, to avoid liability the carrier must prove that it was not negligent and that the damage was caused by an act of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods. *Missouri Pac.*, 377 U.S. at 136–38, 84 S.Ct. at 1143–45; *Johnson & Johnson*, 679 F.2d at 422.

■ Seitzinger argues that the district court erred by relying on 49 C.F.R. § 1037.1 in granting BN's motion for summary judgment. The district court held that Seitzinger's claim was barred by section 1037.1(a) to the extent it was based on estimated weights. Citing 49 C.F.R. § 1037.1(e), the district court also held that Seitzinger had not established a prima facie case relative to the four truck-loaded cars because a difference between the unsupervised weight at origin and the supervised weight at destination alone does not establish a prima facie case for railroad liability. Seitzinger does not dispute the fact that the weight at origin was not supervised. Rather, it contends that this regulation applies only to the voluntary settlement of claims.

In *Association of American Railroads v. Interstate Commerce Commission*, 600 F.2d 989 (D.C.Cir.1979), the court determined that 49 C.F.R. § 1005.7, an Interstate Commerce Commission (ICC) regulation that requires the comparison of net weights in the settlement of claims involving the loss of scrap iron and steel in transit,[3] was inapplicable in the civil litigation of Carmack Amendment claims. "If a railroad does not want to settle a claim in accordance with the net weight regulation, it is free to take the matter to court, where it can offer into evidence all relevant facts." *Id.* at 993. BN attempts to distinguish *American Railroads* on the ground that 49 C.F.R. § 1005.7 addresses the settlement of claims, while 49 C.F.R. § 1037.1 does not specifically mention settlement. We find this distinction to be without significance.

The ICC intended the regulations in 49 C.F.R. pt. 1037 to supplement the rules prescribed in 49 C.F.R. pt. 1005, entitled "Principles and Practices for the Investigation and Voluntary Disposition of Loss and Damage Claims and Processing Salvage."

---

**2.** § 11707. Liability of common carriers under receipts and bills of lading

(a)(1) A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title and a freight forwarder shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier or freight forwarder and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. *The liability imposed under this*

*paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported * * *.*

49 U.S.C. § 11707 (1982) (emphasis added) (formerly codified at 49 U.S.C. § 20(11)).

**3.** § 1005.7 Weight as a measure of loss.

Where weight is used as a measure of loss in rail transit of scrap iron and steel and actual tare and gross weights are determined at origin and destination, the settlement of claims shall be based upon a comparison of net weights at origin and destination.

49 C.F.R. § 1005.7 (1986).

In entering its order adopting 49 C.F.R. pt. 1037, the ICC stated that it had "jurisdiction to prescribe rules for *settlement* of loss and damage claims on grain and grain products, by rail, which supplement [49 C.F.R. pt. 1005]" and that the new regulation was necessary because "the railroads ha[d] not been treating shippers uniformly in the *settlement* of claims on grain and grain products." *Practices and Policies in the Settlement of Loss and Damage Claims on Grain and Grain Products,* 346 I.C.C. 33, 60 (1974) (emphasis added). Thus, *American Railroads* is not distinguishable on the ground urged by BN; rather, the express relationship between the two regulations reinforces the applicability of *American Railroads* in the present case.[4]

Moreover, the ICC does not claim to have jurisdiction to promulgate regulations that determine the merits or the measure of damages of particular loss and damage claims; such determinations are reserved for the courts. *Rules, Regulations, and Practices of Regulated Carriers With Respect to the Processing of Loss and Damage Claims,* 340 I.C.C. 515, 539 (1972). Rather, the ICC acknowledges that its jurisdiction is limited to establishing regulations pertaining to the processing of loss and damage claims by regulated carriers. *Grain and Grain Products,* 346 I.C.C. at 46–47; *Regulated Carriers,* 340 I.C.C. at 539, 543. Specifically, the ICC based its jurisdiction to promulgate the regulation that eliminated estimated weights as a basis for filing loss and damage claims solely on the fact that the regulation is a reasonable claims-handling procedure. *Grain and Grain Products,* 346 I.C.C. at 47–48.

Accordingly, we conclude that 49 C.F.R. § 1037.1 is applicable only in the voluntary settlement of claims and is not applicable in civil litigation to recover the value of property lost in transit.

With 12 C.F.R. § 1037.1 put aside, the grant of summary judgment was appropriate only if Seitzinger failed to establish a prima facie case under the Carmack Amendment, or if BN made a sufficient showing to avoid liability.

■ Concerning the establishment of a prima facie case, the issue is whether Seitzinger sufficiently established the original delivery of 5,150,720 pounds of wheat to BN. Because the wheat was under seal, Seitzinger must produce direct and affirmative proof of the quantity delivered. *See Nat'l Transp. Inc. v. Inn Foods, Inc.,* 827 F.2d 351, 354 (8th Cir.1987). We find that Kermit Knutson's deposition testimony concerning the weighing of the grain at Seitzinger's Kennedy, Minnesota, facility was sufficient direct and affirmative proof of the quantity delivered to survive a motion for summary judgment. Knutson first described the process by which the grain loaded into the four truck-loaded hopper cars was weighed. He then described the process by which the weight of the grain loaded into the other twenty-two hopper cars was estimated. This computation took into account the volume of each car's three compartments, based on actual measurements of each compartment, and the fact that the wheat in question weighed forty-eight pounds per cubic foot. Based on this process, Knutson concluded that each car was loaded with 198,000 pounds of wheat, allowing for a one percent variation. In questioning the accuracy of Knutson's methodology and of Seitzinger's truck scale,[5] BN merely raises issues of disputed fact. Credibility determinations and the weighing of the evidence are jury functions and thus inappropriate for summary judgment.

■ Further, BN has not made a sufficient showing to avoid liability under the Carmack Amendment. The fact that there is no evidence of loss in transit does not

---

**4.** Our conclusion is unaffected by the fact that 49 C.F.R. § 1005.7 was a later addition to 49 C.F.R. pt. 1005, and was actually adopted after 49 C.F.R. pt. 1037. In adopting 49 C.F.R. § 1005.7, the ICC stated: "Although a limited amount of evidence relating to the railroad settlement of loss and damage claims on grain and grain products was introduced in this proceeding, * * * this evidence does not warrant modi-

fication of [49 C.F.R. pt. 1037]." *In re Net Weights for Determining Losses—Scrap Iron and Steel,* 352 I.C.C. 402, 403 (1976).

**5.** An earlier unit train shipped from Seitzinger's Kennedy facility in September 1983 was assessed $7,100 in penalties for the overloading of nine of the twenty-six cars.

absolve BN of liability. As indicated above, once Seitzinger has established a prima facie case, BN can avoid liability only by proving that it was not negligent *and* that the damage was caused by an act of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods. In this regard, BN has " 'a heavy burden of proof akin to res ipsa loquitur because it has peculiarly within its knowledge the facts which may relieve it of liability.' " *Kaiser Aluminum & Chem. Corp. v. Illinois Cent. Gulf R.R. Co.*, 615 F.2d 470, 474 (8th Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980) (quoting *Fulton v. Chicago, Rock Island & Pac. R.R. Co.*, 481 F.2d 326, 333 (8th Cir.), *cert. denied*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973)). While the lack of evidence of loss in transit may negate BN's negligence, BN has not made a showing sufficient to absolve itself of liability because it has not alleged that the loss was caused by one of the excepted causes relieving the carrier of liability.[6]

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

---

**6.** Because we have concluded that the district court's grant of summary judgment was improper, it is unnecessary for us to address whether the judgment was improperly certified under Fed.R.Civ.P. 54(b).