CONAIR CORP.

v.

**OLD DOMINION FREIGHT LINE, INC., Appellant.**

**No. 93–5562.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 25, 1994.

Decided April 28, 1994.

**530**

George W. Wright, Kroll & Trace, Newark, NJ, for appellant.

Robert B. Meola, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Short Hills, NJ, for appellee.

Before HUTCHINSON, ROTH, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In this case of first impression under New Jersey law, we must determine at what point

a common carrier engaged in interstate commerce receives goods from a shipper, thus incurring liability for their loss or destruction. On August 27, 1992, Conair Corporation (Conair), the shipper, commenced this action against Old Dominion Freight Line, Inc. (Old Dominion), the carrier, in the Superior Court of New Jersey. Subsequently, Old Dominion removed the action to the United States District Court for the District of New Jersey, and filed a counterclaim against Conair for an alleged breach of the contract between the parties.[1] Thereafter, the parties filed cross-motions for summary judgment.

After oral argument on the motions, the district court issued a Memorandum and Order granting summary judgment in favor of Conair, awarding Conair damages, and dismissing Old Dominion's counterclaim. The district court found that Conair had loaded its goods onto Old Dominion's trailer, Old Dominion's representative then signed the bills of lading, and no further action was required by Conair to bring about transportation of the goods. Under these circumstances, the district court did not err in holding that Old Dominion, a common carrier engaged in interstate commerce, had received the goods and thus became legally responsible for the shipment. We affirm.

### I.

Conair, a manufacturer and distributor of personal care products, maintains a distribution facility in East Windsor, New Jersey. On December 18, 1989, Conair entered into an Agreement for Motor Contract Carriage Transportation (the Agreement) with a carrier, Old Dominion. The Agreement provides in relevant part:

3. *TERM OF AGREEMENT.* This Agreement shall continue in effect until terminated by either party giving the other party not less than sixty (60) days prior written notice, SHIPPER and CARRIER agree to confer on a regular basis for the purpose of determining the need, if any,

---

1. The district court exercised jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 49 U.S.C. § 11707(a)(2)(B). This court has jurisdiction over this appeal from a final order pursuant to 28 U.S.C. § 1291 and § 1294(1).

for adjustments to this contract and accompanying schedules.

4. *DELIVERY OF GOODS.* CARRIER agrees, that upon receipt of the goods of SHIPPER, to transport and carry such goods with reasonable dispatch ...

8. *LIABILITY FOR LOSS OR DAMAGE TO SHIPMENTS.* CARRIER agrees that, in the transportation of any goods of or for SHIPPER, it will assume, and does assume, the liability of an interstate common motor carrier (49 U.S.C. § 11707) such liability to exist from the time of the receipt of any said goods by CARRIER until proper delivery has been made.

On July 2, 1991, Conair's employees loaded, at its facility, a trailer owned by Old Dominion for transportation to various out-of-state Conair customers. Upon completion of the loading, Ronald Jolacoeur, an Old Dominion driver, signed the bills of lading for the shipment at approximately 4:30 p.m. Jolacoeur did not immediately remove the trailer from Conair's premises, however, apparently because he drove a straight-job truck and not a trailer. Therefore, Old Dominion arranged to have another one of its drivers, Joseph Biggs, remove the trailer and transport it to its destination. Biggs testified that he did not arrive at the Conair warehouse until sometime between 8:00 and 8:15 p.m., at which time he discovered the trailer to be missing. The goods loaded on the stolen trailer were never recovered. By letter dated August 23, 1991, Conair canceled the Agreement and tendered no further shipments to Old Dominion for transportation.

## II.

Old Dominion argues that the district court erred in granting Conair summary judgment and in dismissing its counterclaim against Conair. Our review of the district court's entry of summary judgment in favor of Conair is plenary. *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992). Summary judgment is appropriate only when

it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–32, 106 S.Ct. 2548, 2552–57, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Gray,* 957 F.2d at 1078.

▇▇ Both parties agree that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, which permits a shipper to recover from an initial common carrier in interstate commerce the value of goods lost in shipping without regard to the initial carrier's negligence, is relevant to this action. To establish a *prima facie* case of liability under the Amendment, a shipper must prove the following three elements: (1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) the amount of damages. 49 U.S.C. § 11707(a)(1). *See e.g., Missouri P. Railroad Co. v. Elmore & Stahl,* 377 U.S. 134, 138, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964); *Continental Grain Co. v. Frank Seitzinger Storage, Inc.,* 837 F.2d 836, 839 (8th Cir.1988). After a plaintiff establishes a *prima facie* case of liability against the carrier, the carrier has the burden of proving that it was not negligent and that the loss was caused by an act of God, act of public enemy, act of shipper, act of public authority, or the inherent nature or vice of the goods. *Missouri P. Railroad Co.,* 377 U.S. at 138, 84 S.Ct. at 1145; *Continental Grain,* 837 F.2d at 839.

Old Dominion argues that Conair was not entitled to summary judgment because it did not meet the first element of its burden, proof of receipt of the goods by Old Dominion at the time of the theft.[2] Old Dominion

---

**2.** Old Dominion also relies on the language in the Carmack Amendment that "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier," 49 U.S.C. § 11707(a)(1), in

support of its argument that its issuance of a bill of lading is not determinative of its liability. As the notes to the Amendment demonstrate, however, this provision indicates that a carrier may

contends that Conair cannot establish delivery because Biggs was unable to remove the trailer from Conair's premises because it was missing when he arrived. The issue, however, is not whether Old Dominion had actual physical possession of the trailer prior to the theft, but rather, whether Conair had delivered the shipment to Old Dominion for transportation and Old Dominion thus had received the goods prior to the theft.

▪ It is undisputed that Old Dominion's trailer was completely loaded and prepared for transportation at the time Jolacoeur signed the bills of lading, evidencing receipt of the trailer by Old Dominion. Upon loading the goods into Old Dominion's trailer and signing the bills of lading, there was no further action required by Conair before transportation of the shipment by Old Dominion. At that point, Conair released the trailer to Old Dominion for immediate transportation and Old Dominion had complete and exclusive control of the goods. It was Old Dominion's sole decision whether to remove the trailer immediately or delay removal for its convenience. It chose to send one driver to Conair to sign the bills of lading and not to remove the truck from Conair's premises until later that day. Old Dominion thus had constructive, if not actual, receipt and possession of the shipment at the time of the theft.

Old Dominion emphasizes that Conair, for its convenience, required its truckers to sign bills of lading covering loaded drop trailers prior to Conair's daily closing time at 4:30 p.m., whether or not the truckers were ready to pick up the trailers at this time. Moreover, occasionally, when carriers brought the loaded trailers back to their terminals for unloading, tallying, and reloading into other trailers for delivery to consignees and they discovered shortages of merchandise, Conair did not hold the carriers responsible for such shortages if they were promptly reported to Conair, even though the bills of lading showed receipt of the missing goods by the truckers. However, these allegations do not detract from Conair's practice of issuing bills of lading only for trailers which were loaded and completely ready for transportation, leaving no further obligation on the part of Conair.[3]

The district court was persuaded by the reasoning of *Mattel Inc. v. Interstate Contract Carrier Corp.*, 722 F.2d 17 (2d Cir. 1983), a case which involved similar facts but was resolved under New York law. In *Mattel*, as in this case, the parties loaded the trailer, the carrier then signed the bill of lading, and the trailer remained on the shipper's premises awaiting arrival of the carrier's driver when the trailer was stolen. The district court in *Mattel* held that the risk of loss of the trailer remained with the shipper until the carrier physically removed the trailer from the shipper's premises. The Second Circuit Court of Appeals reversed, however, ruling that "it is not the location of the goods which is controlling in such circumstances, but rather who it is that had actual or constructive possession of the goods." *Id.* at 19. The court stated:

> The trailer supplied by Interstate was loaded, counted, and apparently sealed, and a bill of lading was signed and issued by the carrier's representative on the premises. There was no further action that Mattel was to take to bring about transportation. The only action left was to be taken by the carrier, who had to arrange for his independent tractor operator to call for the trailer and haul it away. As nothing was left to be done by the shipper, the trailer remained on the shipper's premises merely as an accommodation for the carrier.

*Id.* Old Dominion correctly argues, and the district court acknowledged, that *Mattel* was decided on state law grounds and is not controlling in this case. Nevertheless, under the similar facts of this case, the district court correctly found *Mattel* to be persuasive on the issues of whether delivery had occurred and the allocation of risk of loss.

---

still be held liable for damage to the goods, even if it fails to issue a bill of lading.

**3.** Dale Sheehan, Conair's Traffic Manager, testified that merchandise did not leave Conair without a bill of lading being signed, and if the bills were not signed, the freight would be put back on the floor.

Such a conclusion is consistent with the Carmack Amendment for purposes of this case.

▇ Old Dominion next claims that the Federal Bills of Lading Act (Pomerene Act), 49 U.S.C.App. § 81 *et seq.,* and the cases construing the Act establish that a carrier's issuance of a bill of lading raises only a rebuttable presumption of receipt of the goods by the carrier and is not conclusive proof of delivery to the carrier in good order. Old Dominion relies on several cases to support the proposition that signed bills of lading establish only a rebuttable presumption and not conclusive proof of delivery and receipt, and thus the bill of lading signed by its representative did not reflect receipt of the goods for immediate transportation. Even assuming this to be true, Old Dominion has failed to rebut the presumption of delivery and receipt. Most of the cases cited by Old Dominion are distinguishable on the basis that the courts found that the carriers were not ready to immediately undertake shipment because, *inter alia,* no bills of lading had been issued.[4] In contrast, the district court here found that no further action was required by Conair to bring about transportation of the goods.

Finally, Old Dominion asserts that Conair and other carriers had a course of dealing that delivery would not occur, and the risk of loss would not pass, until the carriers had actually removed the trailers from Conair's premises. As support, Old Dominion relies on the testimony of Thomas Snyder, Branch Manager of ABF Freight Systems (ABF), another common carrier which transported Conair's goods, that Conair knew that its truckers routinely arrived at Conair's loading dock several hours after closing time to pick up loaded trailers, sometimes even as late as midnight. However, Snyder testified that as long as the bills of lading were signed, the carrier exercised discretion as to when to pick up the trailer, ABF accepted responsibility for the shipment upon signing the bill of lading, and the carrier took possession of the shipment upon the signing of the bill of lading and thus exercised care, custody, and control over the trailer.

We hold that once Conair loaded its goods onto Old Dominion's trailer and Old Dominion signed the bills of lading, Conair completed delivery to the carrier; no further action was required by Conair to bring about transportation of the goods. Conair proved that it delivered its goods to Old Dominion in good condition and the goods did not arrive at their final destination. Old Dominion's attempts to show that Conair's acts caused the theft of the goods have failed because Conair had no duty to protect the goods once it had delivered them to Old Dominion. Thus, the district court did not err in granting summary judgment for Conair under the Carmack Amendment.

### III.

▇ Next, Old Dominion contends that the district court erred in dismissing its counterclaim against Conair seeking damages for an alleged breach of the Agreement. Conair canceled the Agreement by letter dated August 23, 1991, without giving Old Dominion sixty days notice in accordance with paragraph 3 of the Agreement. Under New Jersey law, the court should adopt the most fair and reasonable interpretation of the contract so as to impute the least hardship on either of the contracting parties. *In the Matter of Community Medical Center,* 623 F.2d 864, 866 (3d Cir.1980). Moreover, a

---

4. *See e.g., Dugdale Packing Co. v. Atchison, T. & S.F.R. Co.,* 347 F.Supp. 1276 (W.D.Mo.1972) (where shipper knew that refrigerated trailer loaded with shipment of meat could not be picked up by defendant railroad until following Monday morning, trailer remained in possession of shipper, no shipping instructions had been issued, and no bill of lading had been delivered to railroad, there was no delivery of shipment to railroad); *Hohenberg Bros. Co. v. Missouri P.R. Co.,* 586 S.W.2d 117 (Tenn.Ct.App.1979) (finding no complete delivery when car could not be removed from shipper's premises until shipper had "ordered out" car; something remained for shipper to do as condition precedent to commencement of transportation); *cf., Kessler Export Corp. v. Reliance Ins. Co.,* 207 F.Supp. 355 (E.D.N.Y.1962) (where carrier signed bill of lading upon loading truck but shipper agreed to house loaded truck in its warehouse over the weekend and only shipper had keys to warehouse, insurance covering goods in transit did not cover loaded truck because goods remained on shipper's premises), *aff'd,* 310 F.2d 936 (2d Cir.1962).

court should not make a different or a better contract than the parties themselves have seen fit to enter into, and all parts of the writing will be given effect if possible.

 On August 23, 1991, Dale Sheehan of Conair wrote to Donald Souza, Vice President of Marketing for Old Dominion, to inform him that Conair had decided to cancel the Agreement. The letter stated:

> It is on this day, the 23rd day of August 1991 that I hereby cancel said contract agreement between Conair Corporation and Old Dominion Freight Lines.
>
> This is in accordance with paragraph 3 of contract between the parties.

The language of the letter clearly states an intention to terminate the Agreement in accordance with paragraph 3 of the Agreement. Moreover, Sheehan testified that his intention in sending the letter was to provide Old Dominion with sixty days notice of Conair's decision to terminate its agreement with Old Dominion in accordance with paragraph 3 of the Agreement. Thus, the district court did not err in concluding that Conair properly canceled the Agreement consistent with its terms.

 Moreover, assuming *arguendo* that Conair failed to provide adequate notice of its cancellation of the Agreement, Conair had no obligation to tender any business to Old Dominion pursuant to the terms of the Agreement. Paragraph 11 of the Agreement, entitled "Agreement Non–Exclusive" provided:

> It is understood and agreed between the parties hereto that this is a non-exclusive Agreement and that CARRIER shall be free to accept freight for transportation from shippers other than SHIPPER and that SHIPPER shall be free to tender freight for transportation to carriers other than CARRIER.

In addition, paragraph 13 of the Agreement, entitled "Target Revenue Level" provided:

> SHIPPER intends to tender to CARRIER for transportation a minimum of $140,-000.00 per year in a series of shipments throughout the duration of this contract. SHIPPER'S failure to render to CARRI-ER the above described minimum shall constitute a breach of the Agreement, and, in such event, CARRIER may, notwithstanding Paragraph 3 above, terminate this Agreement upon thirty (30) days prior written notice to SHIPPER. SHIPPER shall not be liable in any way for failure to meet the target dollar revenue referred to above.

The above language makes clear that Conair had no obligation to tender any freight to Old Dominion for transportation, and expressly provides that Conair shall not be held liable for failure to meet the target dollar revenue amount in the contract.[5] Thus, even assuming that Conair gave Old Dominion insufficient notice in canceling the Agreement, Old Dominion did not incur any compensable damages as a result of Conair's cancellation. Therefore, the district court did not err in dismissing Old Dominion's counterclaim.

### IV.

There being no genuine issues as to any material facts in this case, Conair is entitled to summary judgment as a matter of law. Accordingly, we affirm the district court's granting of Conair's motion for summary judgment against Old Dominion, and its dismissal of Old Dominion's counterclaim against Conair.

---

5. Nevertheless, Conair had tendered revenue in excess of $220,000 to Old Dominion in 1991, thus exceeding the target revenue level provided in the Agreement.