## THE RITA SISTER et al.
### Nos. 67, 79 of 1944.

District Court, E. D. Pennsylvania.
April 23, 1946.

Thomas E. Byrne, Jr., and Krusen, Evans and Shaw, all of Philadelphia, Pa., and Arthur O. Louis and Hill, Rivkins & Middleton, all of New York City, for plaintiffs.

Rawle & Henderson, of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

These libels were filed to recover for damage to several shipments of rabbit skins and for damage and shortage in a shipment of brandy. All the merchandise in question

was carried from Spain to Philadelphia, in the Spanish ship, Rita Sister, arriving May 11, 1944.

### Findings of Fact.

1. Shipments of rabbit skins totaling 428 bales, as set forth in the libels, were received by this ship, in good order and condition, at Barcelona, Spain.

Comment: The undisputed testimony of the ship's officers is that these skins were in good order and appeared dry and that there were no marks or stains on the bales when received.

2. The rabbit skins, when discharged at Philadelphia, were in a damaged condition.

3. The damage was caused by ship's sweat and was not an inherent condition of the skins.

Comment: When the skins were unloaded at Philadelphia the bales appeared moist and the burlap and ropes around some of them were stained and molded. An examination of the bales revealed that the exterior skins, to a varying depth, were molded and had "hair slip," while those in the interior were generally sound. See The Africa Maru, 2 Cir., 54 F.2d 265. Excessive moisture in the hold of a ship, unless the air is frequently changed, condenses into water, known as ship's sweat. Such a condition will cause hair slip in rabbit skins and is conducive to the growth of mold.

4. These bales were stowed in the 'tween deck of holds 3 and 4, which, together, constituted a single large compartment with a tightly fitted wood deck, without scuppers.

5. The bales were stowed without dunnage, directly upon the decking and, in some places, were stowed up to the beams of the weather deck. Where they were not so stowed, cases of cork were stowed on top of them.

Comment: The respondent protests that there is no evidence that dunnage was not used. It is true that the officers did not mention directly either the use or non-use of dunnage but the absence of marks on the decking when the ship arrived in Philadelphia and was surveyed, indicated that it had not been used. There was no sign of dunnage in or about the ship, and the testimony of the officers, though not specific upon that point, leads me to believe that it was, in fact, not used.

6. The stowage of the rabbit skins was improper and negligent.

Comment: It appeared that 3 and 4 'tween decks were equipped with a total of 6 ventilators. These ventilators were 16 inches in diameter leading to the 'tween deck where a 12 inch pipe was telescoped into them, to ventilate the lower hold. Taking the most favorable view of the testimony as to the sufficiency of these ventilators, it can only be said that they "looked all right." There was, however, direct testimony that they were too small, and the ship's officers in their testimony greatly overestimated their diameter and stated that they regarded such overestimate as the minimum. I am not making a finding that the ship was un seaworthy because of the insufficiency of the ventilators, but it is clear that, under the circumstances, a prudent ship's officer would take every reasonable care that his stowage of cargo would not needlessly restrict the limited ventilation provided. Nevertheless, this cargo was stowed directly upon the tightly laid deck and in some places up to the deck beams. Such stowage, of course, would greatly restrict, if not prevent, the circulation of air under and through the cargo, even with the best ventilation, and lead to the creation of conditions under which an excessive amount of moisture and ship's sweat were inevitable in the hold.

7. Two thousand cases of brandy were received by the ship in apparent good order and condition at Cadiz.

Comment: The testimony of the ship's officers is clear that no leaking cases were brought aboard the ship and that the "boat notes" referring to 20 leaking cases, in fact, referred to cases that began to leak during the operation of stowage, after they were brought on the ship.

8. The brandy was packed in light wood cases without braces on the exterior or without reinforcement within, and the straw envelopes were in a weak condition.

Comment: The only testimony on this point is that of the Captain, and his testi-

482

mony is undisputed and seems borne out by the fact that many leaking cases were refused on board the ship.

9. The damage due to breakage of the brandy cargo was due to insufficiency of the packing.

Comment: It would appear inevitable that a certain percentage of bottles so packed would break, even though the greatest care were used in handling them. In fact, 20 cases were leaking after they had been stowed though the evidence seems clear that when received aboard ship they were in a sound condition. These cases were stowed by stevedores who were specialists in the stowage of such cargo, and the testimony is that they were stowed very carefully. This is the only testimony as to the damage sustained by the cases of brandy, and it indicates without much question that such damage was due to the insufficiency of the package.

10. There was a shortage in delivery of the cases of brandy.

Comment: This shortage is completely unexplained and the respondent offered no testimony whatsoever to account for it. The libellant alleges that it is due to the fact that the stow broke down during the voyage because of improper stowage. It is unnecessary to make any finding on that point in view of the unexplained shortage.

11. The ship sailed from Seville with sufficient coal for the voyage.

Comment: The Rita Sister normally consumed 20 tons of coal per day when at sea. She sailed with 570 tons aboard. A good crossing took 20 or 21 days. It thus appears that a reserve of at least 6 or 7 days' supply of fuel was carried.

12. The necessity for the ship to go to the Azores for additional coal was due to unexpected and unusually severe weather encountered on the voyage.

## Conclusions of Law.

1. Whether or not sweat damage is a peril of the sea within the "Carriage of Goods by Sea Act," 46 U.S.C.A. § 1300 et seq., where negligent and improper stowage increases the hazard, the carrier is liable. Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; Wessels v. The Asturias, 2 Cir., 126 F.2d 999.

2. In view of the finding that furs were improperly stowed and ventilation negligently restricted, the respondent must bear the loss from damage to the rabbit skins.

3. The damage to the shipment of brandy, other than the shortage, was due to insufficiency of the package within the meaning of the "Carriage of Goods by Sea Act," 46 U.S.C.A. § 1304(2) (n), and the carrier is not liable therefor.

4. The shortage in the delivery of the cases of brandy is unexcused and the respondent must bear the loss for it.