## KASSER DISTILLERS PRODUCTS CORPORATION v. COMPANHIA DE NAVEGACAO CARREGADORES ACOREANOS.

District Court, S. D. New York.
March 23, 1948.

Bigham, Englar, Jones & Houston, of New York City (F. Herbert Prem, of New York City, of counsel), for libellant.

Reid, Cunningham & Freehill, of New York City (Renato C. Giallorenzi, of New York City, of counsel), for respondent.

BYERS, District Judge.

In this cause recovery is sought by the owner of 2,000 cases of brandy for loss due to breakage during ocean carriage from Oporto, Portugal, to Philadelphia, on the S. S. Goncalo Velho, in January and February of 1944.

The brandy was shipped in wooden boxes, each containing one dozen bottles laid in three layers of four each, packed in cork shavings (pieces of sliced cork) intended to prevent contact between the bottles; that is, a layer of shavings on top and bottom of the layers, and between each, with shavings between each bottle.

The boxes presented no exterior stains when the cargo was laden and the clean bill of lading is taken to mean that the boxes were received in apparent good order and condition.

At out-turn several cases were stained, indicating interior breakage, which was confirmed on inspection at the pier and at the bonded warehouse to which the shipment was removed.

The libellant's witness Leder who observed the opening of the cases and the broken bottles, when asked if he saw whether the top layer of cork shavings had sifted to the bottom, or in between bottles, made this answer: " * * * it is hard to determine, I wouldn't make any attempt to determine whether the shavings had shifted or what had happened to the shavings inside while the breakage took place. I am not qualified."

He had already said that, while there was always some breakage, he regarded this as excessive, but was unable to state what would be normal without consulting records. He also said that most of the shipments of brandy in 1944 were packed in cork shavings.

Out of 2,000 cases (24,000 bottles) the total number of broken bottles would amount to about 63 cases in all, or 756 bottles; but whether all the breakage occurred while the ship's responsibility continued, or whether some took place during and after transportation to the warehouse, is not the subject of proof thus far.

The boxes or cases were intact at the time of delivery. There is no evidence that the cases bore evidence of bruising or chafing such as would have been caused by their striking against one another or something else, which could be explained by shifting of the cargo during the voyage.

As to the adequacy of the stow, the evidence, such as it is, is to the effect that the boxes or cases were well and safely placed in the No. 4 'tween deck space, and in lower hold No. 3. The first officer of the Goncalo Velho said the stow was level as to the top tier. Since the cases were uniform in size, that is informative as to the lower tiers. He said that the stow was

tight and couldn't shift, and that he had an opportunity to examine this cargo while it was being discharged, and that the slings did not strike the hatch coaming during the process, and that none of the slings dropped while being loaded.

The respondent's witness Captain Pilcher, who has been a cargo surveyor in this port for better than 30 years, was present at part of the discharge, and as to the 1,666 cases in No. 4 'tween deck he said: "The stow was level and secure, and there was no evidence of the cargo having shifted during the voyage, and I saw no evidence of breakage * * * of the cases."

Two matters seem to call for consideration in making a decision:

(1) Whether the controversy is governed by clause (n) of paragraph (2) of the Carriage of Goods by Sea Act, 46 U.S.C. A. § 1304, which absolves the carrier from loss or damage arising or resulting from "(n) Insufficiency of packing".

(2) If not, whether clause (q) applies, namely, "Any other cause arising without the actual fault and privity of the carrier", in which case the burden of proof is on the latter.

As I shall hope to show, the libellant must fail under either provision of the statute.

As to the first, it seems that the cargo owner has failed to demonstrate that the packing was sufficient. The breakage was clearly within the cases, which means that the bottles struck one another with sufficient force to crack and open. There is no testimony to the effect that the entire contents of the boxes constituted a compact whole when the covers were nailed on. If that had been shown, it would necessarily follow that the bottles could not have moved, unless a shrinkage in the filling substance took place between the closing at the distillery, and the opening on the pier. But there is no testimony to refute that development.

The likelihood is that the sliced pieces of cork were moist enough to fill the spaces between, around, above and beneath the bottles when the boxes were nailed, but that they dried out sufficiently before delivery at Philadelphia to enable the bottles to move about within the cases, in obedience to the rolling and pitching of the ship under the stress of weather, so as to render a certain amount of breakage inevitable.

The Libellant's Exhibits 4d, 4e, and 4f reveal that the breakage varied from one or two bottles in some boxes, to as high as ten or eleven in others, but there is no showing that the greatest loss occurred in any one part of the stow. I suppose this would have been extremely difficult of proof unless some one had been checking the discharge as the boxes or cases were moved into the slings. These exhibits are consistent, it seems to me, with a distribution of breakage throughout the stow, which means that the insufficient packing was not local to any identified cases.

The libellant's reliance is upon the statement of Mr. Cochrane, called as an expert, that this kind of packing was customary from 1937 through 1944 as to wines imported from Portugal, and that the loss in this case was in excess of that customarily experienced. His evidence was convincing as far as it went, but still it seemed to fall short of a demonstration that this particular shipment was sufficiently packed.

In summary, he said that straw jackets on the bottles were used during the first part of the war, but because of "some kind of a bug" in the straw which caused trouble with the Department of Agriculture, packing in sawdust shavings (cork or wood shavings) was substituted; that within his observation this was better since the straw sleeves did not protect the bottom of the bottle; that the average breakage he computed to be about 1%.

That wooden shavings are now used, but that wine from Portugal now comes in paper jackets, and this has been true since 1944 or 1945. The change to paper jackets would support an inference that it is a better method of packing.

It seems to me that acceptance of the foregoing testimony, which is undisputed, is compatible with the view that insufficient packing of the contents of these particular cases may reasonably be inferred, if nothing more.

A similar deficiency in packing seems to have been present in The Rita Sister et al., D.C., 69 F.Supp. 480, although straw sleeves were employed in that case.

█ Turning now to the question of whether the carrier has assumed its burden of proof under subdivision (q) of paragraph (2) of the Act, which is necessary to decision if the view above expressed concerning the packing is clearly erroneous, it will be seen that there is some evidence of good and sufficient stow, and none to the contrary. The cargo plan is in evidence, and does not suggest anything to indicate a failure to properly and securely lodge the cargo in the 'tween deck of hatch No. 4 and in lower hold No. 3.

It seems evident that the nature of the cargo, and the damage suffered, must influence the kind and quality of proof required to exonerate the carrier. Thus, as to damage to onions, as in Schnell et al. v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373, which might have been the result of either poor stowage, or lack of ventilation in guarding against bad weather, the burden of demonstration rests with the carrier, if it relies upon perils of the sea. But this is not such a case. If the boxes containing these bottles had presented the appearance of chafing or exterior damage to be attributed to striking together or otherwise, i. e., movement or shifting of cargo, I should suppose that the burden of showing a tight and secure stow would call for more proof than has been given; but the absence of any indication of surface damage on the boxes, plus the fact of interior breakage of the contents, induce the view presently held that the carrier has produced sufficient proof of proper and sufficient stowage of this cargo.

I do not understand that the carrier relies upon heavy weather to relieve it under the protection which the law gives it against perils of the seas. If it does, the proof in that behalf fails, for the wind force never rose above 9 on the Beaufort Scale, which held for only a few hours. In other words, customary winter weather in the Atlantic was encountered.

The subject would perhaps require attention if shifting of the cargo damaged the boxes, but, as has been stated, the showing is to the contrary.

It results from the foregoing that the respondent is entitled to a decree dismissing the libel, with costs, to be settled on notice. Findings are filed herewith.

█ In connection with the opinion of even date in this cause, the Court makes the following:

### Findings

1. The libellant was the owner of a shipment of 2,000 wooden boxes or cases containing twelve bottles each of brandy distilled in Portugal, laden on board the S. S. Goncalo Velho at Oporto on or about January 28, 1944, destined for Philadelphia, Pennsylvania, U. S. A.

2. The Goncalo Velho was owned and operated by the respondent.

3. The said ship was in all respects seaworthy when this voyage was begun, and that condition has not been shown to have changed.

4. The said 2,000 boxes were safely and properly laden into the ship, and similarly discharged on arrival at destination at the end of the voyage.

5. There was a breakage of bottles within the cases, which occurred between the completion of stowage and delivery to or at the pier in Philadelphia on or about March 9, 1944, which was in excess of the normal breakage to be expected in the handling of wines and brandies packed and cased as these bottles were.

6. The said excessive breakage was caused by insufficient packing within the boxes or cases, for which the carrier was not responsible.

7. The 2,000 cases were safely and tightly stowed in the No. 4 'tween deck space as to 1,666 cases, and in lower hold No. 3 as to 334 cases, and the breakage of the bottles was not due to improper stowage.

8. The breakage of bottles was not caused by shifting of the cargo, or of the boxes and cases within which they were packed.

### Conclusion

The libel must be dismissed, with costs.